IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

        **Plaintiff,**

v.

DAVID JULIAN MENDOZA
GONZALEZ,

        **Defendant.**

Case No. 24-CR-197-1-JFH

## OPINION AND ORDER

Before the Court is a Motion to Revoke Detention Order, to Set Bond, to Order Conditions of Release, and to Provide Immediate Release on Conditions ("Appeal") filed by Defendant David Julian Mendoza Gonzalez ("Defendant"). Dkt. No. 24. In his Appeal, Defendant seeks revocation of an order entered by United States Magistrate for the District of Colorado Judge Kathryn A. Starnella ordering him detained pending trial [Dkt. No. 24-2]. The Court has reviewed Defendant's Appeal along with its exhibits [Dkt. Nos. 24-1; 24-2; 24-3; 24-5; 25 (sealed)] and the Response filed by Plaintiff the United States of America (the "Government") along with its exhibits [Dkt. No. 31; 32 (sealed)]. For the following reasons, the Defendant's Appeal [Dkt. No. 24] is DENIED.

## BACKGROUND

Defendant is charged by indictment with one count of Drug Conspiracy, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A)(i), 841(b)(1)(A)(vi), 841(b)(1)(A)(viii), and 841(b)(1)(B)(i) and one count of Maintaining a Drug-Involved Premises, in violation of 21 U.S.C. §§ 856(a)(1) and 856(b). Dkt. No. 3. Specifically, the indictment alleges that in or about August 2021 to the date of the indictment (June 17, 2024), Defendant and Co-defendant James Clifford McElwee, knowingly, intentionally and willfully conspired to: (1) possess with intent to distribute 1 kilogram or more

of a mixture and substance containing a detectable amount of heroin; (2) possess with intent to distribute 400 grams or more of a mixture and substance containing a detectable amount of fentanyl; and (3) possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine. *Id.* at 2. The indictment also alleges that Defendant knowingly used and maintained a place located at 528 South 38th West Avenue, Tulsa, Oklahoma, for the purpose of distributing heroin and fentanyl. *Id.* at 6.

Defendant was arrested on July 10, 2024, in the District of Colorado. Dkt. No. 6 at 1. At the time, he was serving on active duty in the United States Army. Dkt. No. 24-1 at 8. After holding a detention hearing, Magistrate Judge Kathryn A. Starnella ordered Defendant detained pending trial, finding that there were "no conditions or combination of conditions that the Court c[ould] impose to reasonably assure community safety or Defendant's appearance as required." Dkt. No. 24-2 at 3. Defendant was transported and arrived in this district on August 5, 2024. Dkt. No. 9. On September 5, 2024, he filed the instant Appeal. Dkt. No. 24.

## AUTHORITY AND ANALYSIS

"If a person is ordered released by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense . . . the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release." 18 U.S.C. § 3145(a)(1). The Tenth Circuit requires this Court to conduct de novo review of a magistrate judge's detention order. *United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003). The Court may receive additional evidence as part of its review. *See* 28 U.S.C. § 636(b)(1). The Federal Rules of Evidence do not apply to detention matters. 18 U.S.C. § 3142(f); Fed. R. Evid. 1101(d)(3).

Pursuant to 18 U.S.C. § 3142(f), the Court must consider whether there are conditions or a combination of conditions that will assure the appearance of Defendant and protect the safety of any other person or the community. Specifically, the Government "must prove risk of flight by a preponderance of the evidence and it must prove dangerousness to any other person or to the community by clear and convincing evidence." *Cisneros*, 328 F.3d at 616 (citations omitted). Section 3142 sets out four factors for the Court to consider: (1) the nature and circumstances of the charged offense; (2) the weight of the evidence; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger that would be posed by the defendant's release. *Id.* § 3142(g). "[A]pplying and weighing the relative importance of the statutory factors requires an individualized determination that necessarily differs for each defendant depending on the circumstances of the case." *United States v. Bragg*, 2021 WL 6143720, at *2 (10th Cir. Dec. 30, 2021).[1]

Here, the Court conducted its de novo review based on the parties' briefing, the transcript of the Colorado detention hearing, and the pretrial services report prepared by the U.S. Probation Office for the District of Colorado.

The Court begins by noting that Defendant is charged with a crime for which there is a presumption of detention. Specifically, Defendant is charged by indictment with participating in a drug conspiracy, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A)(i), 841(b)(1)(A)(vi), 841(b)(1)(A)(viii), and 841(b)(1)(B)(i) and maintaining a drug-involved premises, in violation of 21 U.S.C. §§ 856(a)(1) and 856(b). Dkt. No. 3. The pretrial detention statute states that a rebuttable presumption arises "that no condition or combination of conditions will reasonably

---

[1] Unpublished appellate opinions are not binding precedent but may be cited for their persuasive value. *See* Fed. R. App. P. 32.1.

assure the appearance of the person as required and the safety of the community" if the Court finds there is probable cause to believe that the person committed "an offense for which the maximum sentence is life imprisonment" or "an offense for which a maximum term of imprisonment of ten years or more is prescribed under the Controlled Substances Act (21 U.S.C. 801 et seq.)." 21 U.S.C. § 3142(f)(1)(B) and (C).  Here, the maximum sentence for the drug conspiracy offenses with which Defendant is charged is life imprisonment, *see* 21 U.S.C. §§ 846, 841(b)(1)(A)(i), 841(b)(1)(A)(vi), 841(b)(1)(A)(viii), and the maximum term of imprisonment for maintaining a drug involved premises twenty years, *see* 21 U.S.C. § 856.  Because Defendant was charged by indictment, after presentation of evidence to the grand jury, with offenses that fall within those described in 3142(f)(1)(B) and (C), the Court to finds that probable cause exists, and the presumption applies.

Once the presumption is invoked, "the burden of production shifts to the defendant. However, the burden of persuasion regarding risk-of-flight and danger to the community always remains with the government." *United States v. Stricklin*, 932 F.2d 1353, 1354-55 (10th Cir. 1991).  "The defendant's burden of production is not heavy, but some evidence must be produced," and "[e]ven if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain." *Id.* at 1355.  Here, at the July 15, 2024 hearing, Defendant invoked the pretrial services report, which recommended release on conditions and indicated that Defendant was on active duty with the United States Army and had no criminal history, no history of substance abuse, and no history of mental health issues. Dkt No.  24-1 at 7-9.  The Court does not consider the pretrial services report by itself to be sufficient evidence rebut the presumption of detention, as it is the Court's understanding that the report was prepared without awareness of or information regarding action take to initiate

Defendant's separation from the Army or of his impending transfer to this district. Nevertheless, even if the Court did find that Defendant rebutted the presumption, the Government has met its burden to shown that no condition or combination of conditions will assure Defendant's appearance and protect the safety of other persons or the community if he were released.

### I. Consideration of the 18 U.S.C. § 3142(g) factors.

#### a. The Nature and Circumstances of the Offense Charged.

Defendant is charged with drug conspiracy, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A)(i), 841(b)(1)(A)(vi), 841(b)(1)(A)(viii), and 841(b)(1)(B)(i) and maintaining a drug-involved premises, in violation of 21 U.S.C. §§ 856(a)(1) and 856(b). Dkt. No. 3. Specifically, Defendant is alleged to have conspired to possess with intent to distribute: (1) 1 kilogram or more of a mixture and substance containing a detectable amount of heroin; (2) 400 grams or more of a mixture and substance containing a detectable amount fentanyl; and (3) 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine. *Id.* Defendant is further alleged to have knowingly used and maintained a place located at 528 South 38th West Avenue, Tulsa, Oklahoma, for the purpose of distributing heroin and fentanyl. *Id.* at 6. There is no doubt that these are serious allegations. Under 21 U.S.C. §§ 846, 841(b)(1)(A)(i), 841(b)(1)(A)(vi), 841(b)(1)(A)(viii), the drug conspiracy offenses alleged are punishable by a term of imprisonment between ten years and life. Under § 856 the maintaining a drug involved premises offense is punishable by a term of imprisonment up to twenty years. Further, it is the type of offense contemplated in the § 3142 statutory presumption that no condition or combination of conditions could reasonably assure Defendant's appearance and safety to any other person and the

community. 18 U.S.C. § 3142 (e)(3)(E). Thus, this factor weighs in favor of detention.

### a. The Weight of the Evidence.

During the July 15, 2024 detention hearing, the Government set forth the following facts in its proffer of evidence. In March 2022, law enforcement began investigating a Mexican based international drug trafficking organization ("DTO") that was operating in various areas across the country, including California and Tulsa, Oklahoma. Dkt. No. 24-1 at 15. Investigators learned that the DTO was obtaining and using vehicles from Avila Cars, a small Tulsa car dealership. *Id.* As investigators surveilled vehicles coming and going from the dealership, they observed that some vehicles frequently traveled between two residences; one at 528 South 38th West Avenue, where Defendant lived, and another at 3663 South Quanah, where the utilities were in Defendant's name. *Id.* at 16-17. A gold Chevy Cruz observed at the Quanah address was registered to Defendant. *Id.* A grey Hyundai observed at the Quanah address was registered in someone else's name, but was registered to Defendant's residence on South 38th Avenue. *Id.* When investigators searched the home of the Hyundai's owner, they recovered five kilograms of fentanyl and one kilogram of methamphetamine. *Id.*

Investigators also obtained statements from several cooperating witnesses. *Id*. at 17. One cooperating witness identified Defendant (by name and photograph), as the boss of a fentanyl distribution cell in Tulsa. *Id.* at 17. This witness confirmed that Defendant lived at the South 38th Avenue address and that Defendant's cousin lived at the Quanah address. *Id.* at 18. According to this witness, Defendant was responsible for ordering packages of fentanyl and coordinating its distribution in the Tulsa area. *Id.* 17-18.

A second cooperating witness, who was a courier for the DTO, stated that Defendant recruited him from Mexico to sell drugs. *Id.* According to the second witness, Defendant paid the

"coyote" fee for him to be smuggled into the country and in exchange the witness agreed to sell drugs for Defendant on a one year "work contract." *Id.* The witness stated that Defendant taught him how to sell drugs and gave him orders regarding drug sales. *Id.* The witness: (1) identified Defendant by name and photograph; (2) knew that defendant was in the military; and (3) identified Defendant's personal vehicle, which investigators observed at Defendant's residence. *Id.* The witness also stated that in February of 2023, Defendant lived in California, but would travel to and from Tulsa. *Id.* at 19. According to the witness, Defendant would ship fentanyl and heroin through the mail. *Id.* The packages would typically include 700 – 1,000 grams of heroin, 4,000 – 5,000 fentanyl pills, and approximately 250 grams of powdered fentanyl at a time. *Id.* at 18-19. The witness stated that he collected approximately $3,000 in drug proceeds per day and was paid $500 per week by Defendant. *Id.* at 19. On occasion, Defendant had the witness deposit drug proceeds directly into his bank account. *Id.* Investigators obtained Defendant's bank records, which corroborated the information provided by the witness as to the timing and the amounts of the deposits. *Id.*

A third cooperating witness told investigators that he had shipped narcotics from Riverside, California, to Defendant at the South 38th Avenue address in Tulsa. *Id.* at 20. And a search of Defendant's phone records showed that, as recently as June 2024, Defendant's phone was in contact with phones associated with DEA investigations throughout the country, including Riverside, California. *Id.*

A search warrant executed at Defendant's residence yielded: (1) two firearms; a handgun and an AR-15; (2) a "drug ledger" or "pay sheet" logging amounts of drugs and money; (3) a Rolodex of what appeared to be drug customer names and phone numbers; (4) a Mexican prayer of protection; and (5) between twenty and thirty cell phones. *Id.* at 20-21. Additionally, when

Defendant's wife was interviewed, she confirmed that while the couple lived in Tulsa, neither one of them was working and it was "possible" that Defendant was selling drugs. *Id.* at 21.

Due to the significant weight of this evidence, this factor weighs in favor of detention.

    **a. The History and Characteristics of the Person.**

At the detention hearing, defense counsel proffered evidence regarding Defendant's history and characteristics that went to both danger to the community and risk of flight. Defendant produced five[2] character letters, which indicate that Defendant's friends, colleagues, and family members know him to be honest, kind, generous, trustworthy, encouraging, disciplined, punctual, reliable, and hard-working. Dkt. No. 25 at 9-16. Defendant also pointed to the pretrial services report prepared by the U.S. Probation Office for the District of Colorado [Dkt. No. 25 at 3-8], which indicated that Defendant does not have any gang affiliation or criminal history. Nor does he have a history of substance abuse or mental health issues. *Id.* at 4-5. The report further indicated that Defendant's employment history included service in the United States Marine Corps from 2020 – 2022 and service in the Army beginning in November 2023. As of the date of the report, Defendant was still on active duty in the Army. *Id.* at .

The Government presented testimony by Major Jane Leemon, a Judge Advocate in the Army. Dkt. No. 24-1 at 22-36. Major Leemon testified that, because of the charges pending in this case, Army command was taking steps to initiate separation of Defendant from the Army and that once initiated, the separation process could take approximately 30 days. *Id.* at 28. Major Leemon also testified that in June 2024, prior to charges being filed in this case, Defendant requested leave to visit California. *Id.* at 25. That request was approved, but instead of traveling

---

[2] Although Magistrate Judge Starnella references six letters in the detention appeal transcript [Dkt. No. 24-1 at 58], only five letters were submitted with Defendant's Appeal [Dkt. No. 25 at 9-16].

to California, Defendant traveled to Mexico, without authorization. *Id.* at 25-27. This was in direct contravention of Army policy. *Id.* at 26-27. With its response to Defendant's Appeal, the Government provided documentation from Homeland Security Investigations confirming that Defendant traveled to Mexico in June 2024. Dkt. No. 31-2. Regarding Defendant's finances, Major Leemon testified that his base pay was approximately $2,569.90 per month, and the Government proffered that Defendant recently paid cash for a "brand new" Mercedes, suggesting that he had access to significant financial resources. However, with his Appeal, Defendant provided affidavits by Defendant's wife and mother-in-law, in which they explained that Defendant's in-laws had actually paid for the Mercedes, which was not new. Dkt. No. 24-3; 24-4.

Also notable, is information in the pretrial services report indicating that: (1) at the time of the report, Defendant had only been married to his wife for six months and the couple has no children; (2) at the time of the report, Defendant and his wife had been living with another family for approximately five months and were considering moving in with another friend; and (3) Defendant has used at least four different aliases. Dkt. No. 25 at 4-5.

This evidence, specifically the evidence presented regarding Defendant's: (1) impending separation from the Army; (2) lack of ties to any community; (3) unauthorized travel to Mexico; and (4) use of multiple aliases, raises concerns as to the risk of flight if Defendant were released. Therefore, this factor weighs in favor of detention.

   a. **The Nature and Seriousness of the Danger to any Person or the Community**

As Magistrate Judge Starnella observed during the detention hearing, "There are colleagues who have worked with [Defendant] and believe that he is a reliable soldier. One indicated that if we ever find ourselves at war, he would want to be in a fox hole with [Defendant]. That's how

9

much he trusts him.  And, you know, people have commented about . . . what positive influence [Defendant] has been on their lives."  Dkt. No. 24-1 at 58.  The Court also recognizes that, based on the pretrial services report, Defendant has no criminal history, no history of substance abuse, and no history of mental health issues.  Dkt. No. 25 at 4-5.  There is nothing in the record to indicate that Defendant is a violent or dangerous person.  Nonetheless, given the weight of the evidence, and the seriousness of the offense, the Court finds that Defendant failed to demonstrate that he will not pose a danger to the safety of other persons or the community if released.  *United States v. Voog*, 702 F. App'x 692, 694 (10th Cir. 2017) ("The concern about safety of the community is to be given a broader construction than the mere danger of physical violence.  Safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community." (alteration and internal quotation marks omitted)).  Accordingly, this factor weighs in favor of detention.

## CONCLUSION

Having conducted a de novo review, the Court finds that the Government has met its burden to shown that no condition or combination of conditions will assure Defendant's appearance and protect the safety of other persons or the community if he were released.  Accordingly, Defendant will be detained pending trial.

IT IS THEREFORE ORDERED that Motion to Revoke Detention Order, to Set Bond, to Order Conditions of Release, and to Provide Immediate Release on Conditions [Dkt. No. 24] is DENIED.

IT IS FURTHER ORDERED that that Defendant shall be detained pending trial.  Defendant is committed to the custody of the Attorney General or a designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or

serving sentences or held in custody pending appeal. Defendant must be afforded a reasonable opportunity to consult privately with defense counsel. On order of the United States Court or on request of an attorney for the Government, the person in charge of the corrections facility must deliver Defendant to the United States Marshal for a court appearance.

Dated this 20th day of September 2024.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE